IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Division

| | |
|---|---|
| M. PETER LEIFERT, the NORTH CAROLINA GREEN PARTY, the CONSTITUTION PARTY OF NORTH CAROLINA, the CONSTITUTION PARTY OF THE UNITED STATES, the GREEN PARTY OF THE UNITED STATES and BRIAN IRVING, <br> **Plaintiffs** <br> Vs. <br><br> **NORTH CAROLINA STATE BOARD OF ELECTIONS** <br> **Defendant** | Case No.: <br><br> Judge |

## COMPLAINT

**COME NOW**, Plaintiffs, **M. PETER LEIFERT, NORTH CAROLINA GREEN PARTY** the **GREEN PARTY OF THE UNITED STATES**, the **CONSTITUTION PARTY OF NORTH CAROLINA** and the **CONSTITUTION PARTY OF THE UNITED STATES and BRIAN IRVING** and sue Defendant **NORTH CAROLINA STATE BOARD OF ELECTIONS** and say:

### Action and Jurisdiction:

1. This is an action for legal and equitable relief pursuant to 42 U.S.C. §1983 for violation of Plaintiffs rights under the First and Fourteenth Amendments of the United States Constitution and for violation of the "Elections Clause" of the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

### Parties:

3. Plaintiff M. PETER LEIFERT is a registered voter in North Carolina who supports the principles of the North Carolina Green Party and desires to identify his preference for, and affiliation with, the North Carolina Green Party on his voter registration and to be a candidate for office as a candidate of the North Carolina Green Party or as an Independent candidate and U.S. Representative for the North Carolina Sixth congressional district with his principal office in Greensboro, North Carolina.

4. Plaintiff NORTH CAROLINA GREEN PARTY:

    a.      Is a political organization in North Carolina desiring to be a "qualified" party for purposes of nominating candidates for political office.

    b.      Is the official state affiliate of the GREEN PARTY OF THE UNITED STATES.

    c.      Brings this action on part of itself Greensboro – Winston Salem Chapter, its candidates, including indigent candidates, and its members and voters who support it.

5. Plaintiff GREEN PARTY OF THE UNITED STATES:

    a.      Was organized in 1982 and has been in continuous existence since then.

    b.      Is a qualified party entitled to have its candidates identified on the ballot by their party affiliation in 24 states.

    c.      Has had a presidential candidate in every presidential election since 1996.

6. Plaintiff CONSTITUTION PARTY OF NORTH CAROLINA:

    a.      Is a political organization in North Carolina desiring to be a "qualified" party for purposes of nominating candidates for political office.

    b.      Is the official state affiliate of the CONSTITUTION PARTY OF THE UNITED STATES.

    c.      Brings this action on part of itself, its candidates and its members and voters who support it.

7. Plaintiff CONSTITUTION PARTY OF THE UNITED STATES:

    a.      Was organized in 1992 and has been in continuous existence since then.

    b.      Has accredited state-party affiliates in 36 states

    c.      Is a qualified party entitled to have its candidates identified on the ballot by their party affiliation in 18 states.

    d.      Has had a presidential candidate in every presidential election since 2000.

and desires to have its state affiliate, the Green Party of North Carolina, recognized as a political party under North Carolina law.

8. Plaintiff BRIAN IRVING is a North Carolina registered voter of the Libertarian Party of North Carolina.

9. Defendant NORTH CAROLINA STATE BOARD OF ELECTIONS is the State agency established for the purposes of administering North Carolina's election laws.

10. Plaintiffs have been required to engage an attorney to represent them in this matter and have agreed to compensate him for his services.

## Common Allegations:

11. N.C. Gen. Stat. [Herein "NCGS"] §163-278.6. provides, in relevant part:

    (15) The term "political party" means any political party organized or operating in this State, whether or not that party is recognized under the provisions of G.S. 163-96.

12. NCGS §163-81.10 provides in relevant part:

    (b) Access to Registration Records. - Upon request by that person, the county board of elections shall provide to any person a list of the registered voters of the county or of any precinct or precincts in the county. …

    The county board shall require each person to whom a list is furnished to reimburse the board for the actual cost incurred in preparing it, except as provided in subsection (c) of this section. Actual cost for the purpose of this section shall not include the cost of any equipment or any imputed overhead expenses. When furnishing information under this subsection to a purchaser on a magnetic medium provided by the county board or the purchaser, the county board may impose a service charge of up to twenty-five dollars ($25.00).

    (c)     Free Lists. - A county board shall provide, upon written request, one free list of all the registered voters in the county to the State chair of each political party and to the county chair of each political party once in every odd-numbered year, once during the first six calendar months of every even-numbered year, and once during the latter six calendar months of every even-numbered year. Each free list shall include the name, address, gender, age but not date of birth, race, political affiliation, voting history, precinct, precinct name, precinct identification code, congressional district, senate district, representative district, and, where applicable, county commissioner district, city governing board district, fire district, soil and water conservation district, and voter history including primary, general, and special districts of each registered voter. … As used in this section, "political party" means a political party as defined in G.S. 163-96.

13. NCGS §163-82.4(c) provides, in relevant part:

    "[T]he county board shall not change the registrant's status to "unaffiliated" unless the registrant clearly indicates a desire in accordance with G.S. 163-82.17 for such a change."

14. NCGS §163-96 provides, in relevant part:
    (a) Definition. -- A political party within the meaning of the election laws of this State shall be either
    **(1)** Any group of voters which, at the last preceding general State election, polled for its candidate for Governor, or for presidential electors, at least two

- 3 –

percent (2%) of the entire vote cast in the State for Governor or for presidential electors; or

**(2)** Any group of voters which shall have filed with the State Board of Elections petitions for the formulation of a new political party which are signed by registered and qualified voters in this State equal in number to two percent (2%) of the total number of voters who voted in the most recent general election for Governor. Also the petition must be signed by at least 200 registered voters from each of four congressional districts in North Carolina.

(b) Petitions for New Political Party. - Petitions for the creation of a new political party shall contain on the heading of each page of the petition in bold print or all in capital letters the words: "THE UNDERSIGNED REGISTERED VOTERS IN ____ COUNTY HEREBY PETITION FOR THE FORMATION OF A NEW POLITICAL PARTY TO BE NAMED ____ AND WHOSE STATE CHAIRMAN IS _____, RESIDING AT _____ AND WHO CAN BE REACHED BY TELEPHONE AT ____."

…

In addition to the form of the petition, the organizers and petition circulators shall inform the signers of the general purpose and intent of the new party.

**(b1)** Each petition shall be presented to the chairman of the board of elections of the county *in which the signatures were obtained*, and it shall be the chairman's duty:
   **(1)** To examine the signatures on the petition and place a check mark on the petition by the name of each signer who is qualified and registered to vote in his county.
   **(2)** To attach to the petition his signed certificate
      **a.** Stating that the signatures on the petition have been checked against the registration records and
      **b.** Indicating the number found qualified and registered to vote in his county.
   **(3)** To return each petition, together with the certificate required by the preceding subdivision, to the person who presented it to him for checking.

15. New parties seeking recognition must use petitions containing the language in NCGS §163-96(b) and no other language.

16. NCGS §163-97 provides, in relevant part:

    "When any political party fails to meet the test set forth in G.S. 163-96(a)(1), it shall cease to be a political party within the meaning of the primary and general election laws and all other provisions of this Chapter."

17. NCGS §163-97.1 provides, in relevant part:

    The State Board of Elections shall be authorized to promulgate appropriate procedures to order the county boards of elections to change the registration

- 4 –

affiliation of all voters who are recorded on the voter registration books as being affiliated with a political party which has lost its legal status as provided in G.S. 163-97. The State Board of Elections shall not implement the authority contained in this section earlier than 90 days following the certification of the election in which the political party failed to continue its legal status as provided in G.S. 163-97. All voters affiliated with such expired political party shall be changed to "unaffiliated designation" by the State Board's order and all such registrants shall be entitled to declare a political party affiliation as provided in G.S. 163-82.17.

18. NCGS §163-98 provides. in relevant part:

    In the first general election following the date on which a new political party qualifies under the provisions of G.S. 163-96, it shall be entitled to have the names of its candidates for national, State, congressional, and local offices printed on the official ballots upon paying a filing fee equal to that provided for candidates for the office in G.S. 163-107 or upon complying with the alternative available to candidates for the office in G.S. 163-107.1.

    For the first general election following the date on which it qualifies under G.S. 163-96, a new political party shall select its candidates by party convention. Following adjournment of the nominating convention, but not later than the first day of July prior to the general election … Any candidate nominated by a new party shall be affiliated with the party at the time of certification to the State Board of Elections. The requirement of affiliation with the party will be met if the candidate submits at or before the time of certification as a candidate an application to change party affiliation to that party.

19. NCGS §163-107 provides in relevant part:

    At the time of filing a notice of candidacy, each candidate shall pay to the board of elections with which he files under the provisions of G.S. 163-106 a filing fee for the office he seeks in the amount specified in the following tabulation:

    | Office Sought. | Amount of Filing Fee |
    |---|---|
    | Governor | One percent (1%) of the annual salary of the office sought\ |
    | Lieutenant Governor | One percent (1%) of the annual salary of the office sought |
    | United States Senator | One percent (1%) of the annual salary of the office sought |
    | Members of the United States House of Representatives | One percent (1%) of the annual salary of the office sought |
    | State Senator | One percent (1%) of the annual salary of the office sought |
    | Member of the State House of Representatives | One percent (1%) of the annual salary of the office sought |

20. The North Carolina Statutes do not provide and exemption from the requirement of NCGS §163-107 for indigent candidates.

21. NCGS §163-107.1 provides, in relevant part:

- 5 –

**(a)** Any qualified voter who seeks nomination in the party primary of the political party with which he affiliates may, in lieu of payment of any filing fee required for the office he seeks, file a written petition requesting him to be a candidate for a specified office with the appropriate board of elections, State, county or municipal.

**(b)** If the candidate is seeking the office of United States Senator, Governor, Lieutenant Governor, or any State executive officer, the petition must be signed by 10,000 registered voters who are members of the political party in whose primary the candidate desires to run, except that in the case of a political party as defined by G.S. 163-96(a)(2) which will be making nominations by primary election, the petition must be signed by five percent (5%) of the registered voters of the State who are affiliated with the same political party in whose primary the candidate desires to run, or in the alternative, the petition shall be signed by no less than 8,000 registered voters regardless of the voter's political party affiliation, whichever requirement is greater. … The names on the petition shall be verified by the board of elections of the county where the signer is registered, and the petition must be presented to the county board of elections at least 15 days before the petition is due to be filed with the State Board of Elections. When a proper petition has been filed, the candidate's name shall be printed on the primary ballot.

22. NCGS §163-122 provides, in relevant part:

(a) Procedure for Having Name Printed on Ballot as Unaffiliated Candidate. - Any qualified voter who seeks to have his name printed on the general election ballot as an unaffiliated candidate shall:

(1) If the office is a statewide office, file written petitions with the State Board of Elections supporting his candidacy for a specified office. These petitions… must be signed by qualified voters <u>of the State equal in number to two percent (2%) of the total number of voters who voted in the most recent general election for Governor. Also, the petition must be signed by at least 200 registered voters from each of four congressional districts in North Carolina.</u> No later than 5:00 p.m. on the fifteenth day preceding the date the petitions are due to be filed with the State Board of Elections, each petition shall be presented to the chairman of the board of elections of the county <u>in which the signatures were obtained.</u>

(2) If the office is a district office under the jurisdiction of the State Board of Elections under G.S. 163-182.4(b), file written petitions with the State Board of Elections supporting that voter's candidacy for a specified office. These petitions … must be signed by qualified voters of the district equal in number to four percent (4%) of the total number of registered voters in the district as reflected by the voter registration records of the State Board of Elections as of January 1 of the year in which the general election is to be held. Each petition shall be presented to the chairman of the board of elections of the county in which the signatures were obtained.

(b) Form of Petition. - Petitions requesting an unaffiliated candidate to be placed on the general election ballot shall contain on the heading of each page of the petition in bold print or in all capital letters the words: "THE UNDERSIGNED REGISTERED VOTERS IN _____ COUNTY HEREBY PETITION ON BEHALF OF _____ AS AN

UNAFFILIATED CANDIDATE FOR THE OFFICE OF _____ IN THE NEXT GENERAL ELECTION. THE UNDERSIGNED HEREBY PETITION THAT SUBJECT CANDIDATE BE PLACED ON THE APPROPRIATE BALLOT UPON COMPLIANCE WITH THE PROVISIONS CONTAINED IN G.S. 163-122."

(e) Any candidate seeking to have that candidate's name printed on the general election ballot under this section shall pay a filing fee equal to that provided for candidates for the office in G.S. 163-107 or comply with the alternative available to candidates for the office in G.S. 163-107.1.

23. NCGS §163-123 provides in relevant part:

(a) Procedure for Qualifying as a Write-In Candidate. - Any qualified voter who seeks to have write-in votes for him counted in a general election shall file a declaration of intent in accordance with subsection (b) of this section and petition(s) in accordance with subsection (c) of this section.

(c) Petitions for Write-in Candidacy. - An applicant for write-in candidacy shall:
  (1) If the office is a statewide office, file written petitions with the State Board of Elections supporting his candidacy for a specified office. … They shall be signed by 500 qualified voters of the State. …
  (2) If the office is a district office under the jurisdiction of the State Board of Elections under G.S. 163-182.4(b), file written petitions with the State Board of Elections supporting that applicant's candidacy for a specified office. These petitions … must be signed by 250 qualified voters.

<u>**COUNT I-A:**</u>
<u>**North Carolina's Party Recognition Petition Signature**</u>
<u>**Requirement Impose Unconstitutional Burdens**</u>
<u>**On New Parties Seeking State Recognition:**</u>

24. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

25. Prior to 1981, North Carolina only required 10,000 petition signatures for a new party to become a recognized political party.

26. Between 1981 and 1984, North Carolina only required 5,000 petition signatures to become a recognized political party, but, pursuant to that, statutory language required that the voters agree to have their voter registration changed to reflect an affiliation with the party named in the petition.

27. The "two percent (2%) of the entire vote cast in the State for Governor" requirement was established in 1983.

28. Since 1984 to total votes for North Carolina governor and the corresponding following new party petition signatures have been:

| Election Year | Votes for Governor | Following Signature Requirement |
|---|---|---|
| 1984 | 2,226,727 | 44,535 |
| 1988 | 2,180,205 | 43,604 |
| 1992 | 2,595,184 | 51,904 |
| 1996 | 2,633,690 | 52,674 |
| 2000 | 2,942,062 | 58,841 |
| 2004 | 3,434,175 | 68,684 |
| 2008 | 4,268,941 | 85,379 |
| 2012 | 4,468,295 | 89,366 |
| 2016 | 4,659,736 | 93,195 |

29. Defendant limits parties to one presidential election cycle to collect the signatures needed for a new party to become recognized.
30. The legislative record does not contain any discussion of:
    a. The purpose of the petition signature requirements required by NCGS §163-96(a)(2)
    b. Any identified need for the party qualifying petitions to satisfy the petition signature requirements in NCGS §163-96(a)(2).
31. NCGS §163-96(a)(2) represents the only means by which new parties can *become* recognized in North Carolina.
32. North Carolina's new party qualifying petition signature requirement is:
    a. The highest of any state in which new parties actually qualify by petition signatures.
    b. Almost 50% higher that the state with the second highest petition signature requirement.
33. Satisfying the NCGS §163-96(a)(2) petition signature requirement to become a recognized party imposes severe burdens on new parties.
34. Any state interest justifying the petition requirement established by NCGS §163-96(a)(2) can be satisfied by a lower number of signatures than are now required by the statute.

35. North Carolina has conducted elections with as many as six candidates for a single office – six Presidential candidates in 1980 -- and:
    a. Has no evidence that this resulted in voter confusion.
    b. Has no evidence that this resulted in an unmanageable ballot.
    c. Has no evidence that the presence of a large number of candidates increased the cost or the administrative burden of preparing the ballot or conducting the election.
36. The burden NCGS §163-96(a)(2) imposed on new parties in *obtaining* ballot recognition by petition signatures outweighs any legitimate interest the State may have in requiring new parties to file the number of petition signatures required by NCGS §163-96(a)(2).
37. To *retain* its "recognized" status a newly recognized party must, pursuant to NCGS §163.97, satisfy the requirements of NCGS §163-96(a)(1) in the election following the year in which it becomes recognized.
38. New parties that lose their status as recognized parties in the first election after they become recognized are required to again satisfy the requirements of NCGS §163-96(a)(2) to again become recognized.
39. Lack of continuing party recognition burdens a political party's ability to establish itself and grow through the attraction of candidates and candidates and voters.
40. The burden of satisfying the requirements of NCGS §163-96(a)(2) twice in successive election cycles imposes severe burdens on new parties.
41. No provision of the North Carolina statutes requires a party to have a candidate for governor or president in any election for these offices.
42. To the extent that NCGS §163-96(a)(1) is construed to require parties to have a candidate for governor or president to retain recognition it:
    a. Compels new parties to engage in an activity that they would not otherwise engage in.
    b. Compels new parties to devote their efforts and resources to campaigns for an office for which it may not desire to have a candidate.
    c. Impermissibly interferes with the inner-workings of new parties.
43. Any legitimate state interest in managing ballot access by new parties can be satisfied with a lower number of signatures than is required by NCGS §163-122(a).

- 9 –

Case 1:17-cv-00147-WO-JLW   Document 1   Filed 02/23/17   Page 9 of 20

44. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:
    a.  Finding that NCGS §163-96(a)(2) is unconstitutional on the grounds that the statute unconstitutionally imposes severe burdens on new parties seeking recognition through the collection of petition signatures.
    b.  Finding that the combination of the requirements of NCGS §163-96(a)(2) and the requirements of NCGS §163.97/§163-96(a)(1) imposes an unconstitutionally severe burden on new parties seeking retain recognition.
    c.  Enjoining the Defendant from enforcing NCGS §163-96(a)(2).
    d.  Directing that the North Carolina Green Party and the Constitution Party of North Carolina be deemed recognized parties.
    a.  Awarding Plaintiffs attorney's fees and costs.

## COUNT I-B:
## North Carolina's Party Qualifying Petition Signature Requirement Impose Unconstitutional Burdens On New Parties Seeking State Recognition in PRESIDENTIAL ELECTION YEARS:

45. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 42 and further allege as follows:
46. Art. 1, Sec. 4 of the U.S. Constitution, the "Elections Clause," does not authorize states to enact statutes governing the election of presidential candidates.
47. Any State interest that justifies the requirements of NCGS §163-96(a)(2) with respect to state elections and the election of state representatives to the U.S. Senate and House of Representatives is of diminished significance when the statute is applied to presidential elections.
48. National parties have an interest in the recognition of their state affiliates independent of the interests of their state affiliates.
49. National parties only have candidates for President.
50. NCGS §163-96(a)(2) interferes with the ability of the Constitution Party of the United States and Green Party of the United States to promote the electoral performance of their Presidential candidates.

51. Any state interest in its requirements for recognition of a new party are subordinate to the national interests of the Constitution Party of the United States and Green Party of the United States.

52. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:
   a. Finding that NCGS §163-96(a)(2) is unconstitutional when applied to the recognition of new parties in Presidential election years.
   b. Enjoining the Defendant from enforcing NCGS §163-96(a)(2) in Presidential election years.
   c. Awarding Plaintiffs attorney's fees and costs.

### COUNT I-C:
### The Mandatory New Party Petition Language And Instructions to Petition Circulators Is Unconstitutionally Vague and Violates First Amendment Freedom Of Speech:

53. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

54. The circulation of new party qualifying petitions constitutes an exercise of political speech.

55. Petition forms used to collect the signatures required by NCGS §163-95(a)(2) are issued by the Defendant upon request of a new party.

56. New parties must use the petition form issued by the Defendant.

57. The mandated language of new party petitions calls for the "formation" of a new political party.

58. The word "formation" is inherently vague.

59. The State has no role in the "formation" of any new political party.

60. The mandated language of new party petitions does not identify to whom the petition is addressed – e.g., who is being "petitioned."

61. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:
   a. Finding that NCGS §163-96(a)(2) is unconstitutional on the grounds that
      (i) The mandated petition language is unconstitutionally vague.
      (ii) The compulsory use of the language in NCGS §163-96(b) and no other language violates Plaintiffs' right of free speech.

- 11 –

b. Enjoining the Defendant from enforcing NCGS §163-96(b)

c. Awarding Plaintiffs attorney's fees and costs.

## COUNT II
## NCGS §163-96(a)(1) Is
## Unconstitutionally Vague

62. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

63. NCGS §163-96(a)(1) operates exclusively by reference to the performance of a party's candidate for governor or president.

64. No provision of the North Carolina statutes requires a party to have a candidate for governor or president in the first election after they become recognized.

65. New parties obtaining recognition by satisfying the requirements of NCGS §163-96(a)(2) are not provided with any statutory guidance relating to the presence or absence of a requirement to have a candidate for either of governor or president to retain their recognition.

66. Defendant contends that NCGS §163-96(a)(1) is *exclusively* a requirement for *retention* of recognition as a political party.

67. Defendant's interpretation of NCGS §163-96(a)(1) renders NCGS §163-97 irrelevant surplusage.

68. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:

   a. Finding that NCGS §163-96(a)(1) is unconstitutionally vague.

   b. Finding that satisfying the requirements of NCGS §163-96(a)(1) represents an alternative way of becoming a recognized political party.

   c. Enjoining Defendant from enforcing NCGS §163-96(a)(1) as a condition for the retention of a party's recognition.

   d. Awarding Plaintiffs attorney's fees and costs.

## COUNT III:
## North Carolina's Petition Signature Verification
## Statutes and Procedures Are Unconstitutional

69. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

70. NCGS §163-96(b1) provides, in relevant part, that:

- 12 –

> (b1) Each petition shall be presented to the chairman of the board of elections of the county in which the signatures were obtained, and it shall be the chairman's duty:
> **(1)** To examine the signatures on the petition and place a check mark on the petition by the name of each signer who is qualified and registered to vote in his county.

71. No provisions of the North Carolina General Statutes specify:

    a. That the name that a petition signer uses in signing the petition must be the name by which they are registered to vote.

    b. The address identified on a petition must be the address identified on the signer's voter registration.

72. North Carolina requires *party* petition forms to be filed with the county where they are *obtained* and requires petition signatures to be verified by county election officials.

73. NCGS §163-07.1(b), which describes the candidate petition requirements, provides that that petitions must be filed for verification in the county *where the voter is registered*.

74. County election officials do not have the capacity to verify the signatures of voters registered to vote in another county.

75. Petition signature verification is conducted in accordance with the requirements established independently by individual counties.

76. Defendant does not independently verify the results of petition signature verification by county officials.

77. North Carolina has no, and/or does not employ any, procedure for:

    a. Verifying the signature of voters who have changed their name between the time they signed a petition and the time the petition signatures are verified.

    b. Verifying the signature of voters who were not registered voters in the county where the petition was signed.

    c. Verifying the signature of voters who have moved from the county where the petition was signed and re-registered in another county between the time the petition was signed and the time petition signatures are verified.

    d. Verifying the voter registration status and/or signature of any petition signers whose signature was rejected by a county for not being registered to vote in the county.

- 13 –

78. North Carolina maintains an electronic voter registration list that is the "official" list of registered voters.

79. In their reports of signature verification counts, counties identify specific petition signers whose signature has been accepted.

80. North Carolina has the capability to identify the current county of residence of petition signers who no longer reside in the county where the petition was signed and verify signatures rejected by county officials.

81. North Carolina does not apply the capability described in the foregoing paragraph to ensure that the signatures of all qualified voters who sign a new party petition are counted.

82. North Carolina does not have a *statutory* procedure for new parties to appeal the rejection of petition signatures.

83. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:
    (a) Finding that North Carolina's statutory schema for petition signature verification is unconstitutional.
    (b) Requiring Defendants to establish procedures that ensure that the party qualifying petition signatures of *every* properly registered voter are counted.
    (c) Awarding Plaintiffs attorney's fees and costs.

### COUNT IV:
### North Carolina's Requirements for Ballot
### Access by "Unaffiliated" Candidates Imposes
### Unconstitutional Burdens on Candidates:

84. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

85. NCGS §163-122 requires Independent ["Unaffiliated] candidates to qualify for ballot inclusion by:

> a. Filing petitions "signed by qualified voters of the State equal in number to two percent (2%) of the total number of voters who voted in the most recent general election for Governor. [NCGS §163-122(a)(1)]….

*AND*

> e. Paying a filing fee equal to that provided for candidates for the office in G.S. 163-107 or by complying with the alternative available to candidates for the office in G.S. 163-107.1.

- 14 –

86. NCGS §163-122(a)(1) applies to all Unaffiliated candidates including Presidential candidates.

87. Truly unaffiliated candidates lack the infrastructure (organization and volunteers) to satisfy the requirements of NCGS §163-122(a)(1).

88. Satisfying the requirements of NCGS §163-122(a)(1) imposes a severe burden on Independent ["Unaffiliated] candidates.

89. Even the most diligent truly unaffiliated candidate is constructively excluded from the ballot by the requirements of NCGS §163-122(a)(1).

90. North Carolina's petition signature requirements for ballot access by candidates for statewide office are the highest in the nation.

91. Only one candidate for statewide office – Billionaire Presidential candidate Ross Perot in 1992 -- has ever been able to satisfy the current requirements of NCGS §163-122(a).

92. Any legitimate state interest in managing ballot access by statewide candidates can be satisfied with a lower number of signatures than is required by NCGS §163-122(a).

93. The state has no legitimate justification for the requirements of NCGS §163-122(e) in addition to the requirements of NCGS §163-122(a)(1).

94. The burden imposed by NCGS §163-122(a)(1) is so excessive that it constructively compels candidates for statewide office to run as write-in candidates.

95. NCGS §163-122(e) constructively requires Unaffiliated candidates to pay a filing fee.

96. Neither NCGS §163-122 nor any other provision of the North Carolina statutes provides an exemption for indigent candidates.

97. Any legitimate state interest in limiting candidate's ballot access is adequately served by NCGS §163-122(a) alone.

98. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:
   a. Finding that NCGS §163-122 is unconstitutionally burdensome on prospective candidates for statewide offices.
   b. Finding that NCGS §163-122 is unconstitutionally burdensome on prospective Presidential candidates.
   c. Awarding Plaintiffs attorney's fees and costs.

**COUNT V:**
**North Carolina's Requirements for Ballot**
**Listing of "Unaffiliated" Candidates Who**

### Have a *Bona Fide* Party Affiliation
### Unconstitutionally Burdens
### The Rights of voters:

99. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

100. NCGS 163-122 provides for <u>*unaffiliated*</u> candidates to be included on the ballot by filing petitions containing the numbers of signatures for the office they seek as prescribed therein.

101. No candidate who is not the nominee of a recognized party can have his party affiliation identified on the ballot.

102. Candidates who are members of a party that is not a recognized party are, nonetheless, affiliated with that party and are <u>*not*</u> "unaffiliated" candidates.

103. North Carolina has no separate statute providing for candidates who are members of a party that is not a recognized party to qualify for inclusion on the ballot.

104. Candidates who are members of a party that is not a recognized party can only qualify for inclusion on the ballot by satisfying the conditions prescribed by NCGS 163-122.

105. All candidates who qualify for inclusion on the ballot by satisfying the requirements of NCGS 163-122 are identified on the ballot as Independent or Unaffiliated.

106. North Carolina has no provision for candidates who are members of a party that is not a recognized party to have their party affiliation identified on the ballot.

107. The inclusion of a candidate's party affiliation of the ballot provides a valuable "voting cue" for voters.

108. Denial of candidate's the right to be identified on the ballot by their party affiliation:
    a. Imposes injury to the rights of voters.
    b. Causes injury to candidates.

109. Voters who support parties, and the candidates of parties, that have not become recognized pursuant to the provisions of NCGS §163.96(a)(2) are burdened by not being able to identify the candidates of such a party.

110. Inclusion of the party affiliation designation of the party of which a candidate is a member would not impose any burden on the State.

111. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a. Denying the right of candidates who have a *boni fide* party affiliation the right to be identified by that affiliation label on the ballot is unconstitutional.

b. Awarding Plaintiffs attorney's fees and costs.

## COUNT VI:
## North Carolina Statutes Impermissibly
## Limit Voter Registration:

112. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

113. Voters who have a party preference for a party that has not become recognized by satisfying the requirements of NCGS §163-96(a)(2) cannot have their party preference included on their voter registration record.

114. Recognized parties and candidates are entitled to obtain lists of registered voters that includes their party affiliation

115. Being able to identify voters who have a preference for parties seeking recognition is important to their ability to identify prospective volunteers, petition signers and donors who will enable them to satisfy the requirements of NCGS §163-96(a)(2).

116. North Carolina's voter registration schema:
    a. Provides recognized parties with a benefit that is not available to un-recognized parties.
    b. Violates principles of Equal Protection.

117. Allowing voters who have an affiliation with a recognized party to have their affiliation identified in their voter registration but denying that same right to voters who are affiliated with an unrecognized party:
    - Violates principles of Equal Protection.
    - Violates principles freedom of speech.

118. Allowing voters to register their affiliation with un-recognized parties and maintaining such information in the official list of registered voters would not impose any burden on Defendants.

119. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a. North Carolina's system of denying some voters -- but not all voters -- the right to have their party affiliation identified on their voter registration is unconstitutional

b. Awarding Plaintiffs attorney's fees and costs.

## COUNT VII:
## North Carolina's Provision for Providing
## Voter Registration Lists Is Unconstitutional

120. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

121. County election boards are required by NCGS §193-82.10(c) to provide one free list of registered voters to political parties that are qualified under the provisions of NCGS §193-96.

122. Unrecognized political parties and their candidates can only obtain a voter registration list by paying the county board the actual cost of preparing it.

123. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a. The North Carolina provisions regarding the distribution of voter registration lists represents an unconstitutional violating of principles of Equal Protection.

b. Awarding Plaintiffs attorney's fees and costs.

## COUNT VIII:
## Petition Requirement for Write-in
## Candidates is Unconstitutional:

124. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

125. Voters have a fundamental write to vote for the candidate of their choice.

126. Pursuant to NCGS §163-123, candidates wanting to be "write-in" candidates must file petitions containing the numbers of signatures prescribed by statute – the actual number being identified in the statute.

127. Votes cast for a write-in candidate who has not satisfied to petition signature requirement of NCGS §163-123 are not counted.

128. Every voter has a constitutional right to have his vote counted.

129. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a. Finding that NCG §163-123 imposes an unconstitutional requirement on write-in candidates and unconstitutionally interferes with the right of voters who cast a write-in vote for candidates who have not satisfied the requirement of NCG §163-123 to have their votes counted.

b. Awarding Plaintiffs attorney's fees and costs.

## COUNT IX:
### The Cumulative Effect of the Challenged Statutes Imposes an Unconstitutional Burden on New Parties and Was Intended to Do So.

130. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 22 and further allege as follows:

131. The cumulative effect of NCGS §§163-96(a)-(b), 163-97, 163-122, 163-123 and 193-82.10(c) constitute an unconstitutional burden on:
   a. New parties seeking ballot qualification.
   b. Candidates of non-qualified parties.
   c. Voters affiliated with, and wanting to vote for the candidates of, new parties.

132. The cumulative burden imposed by NCGS §§163-96(a)-(b), 163-97, 163-122, 163-123 and 193-82.10(c) was intended by the North Carolina General Assembly to suppress the development of new parties and their candidates and voting supporters.

133. **WHEREFORE**, Plaintiffs ask that the court enter its judgment:
   a. Declaring the entirety of the North Carolina election schema as it relates to the initial and continuing recognition of new parties and ballot access by candidates of unrecognized parties and the registration of voters to be unconstitutional, and
   b. Awarding Plaintiffs attorney's fees and costs.

                                                ____s/s/ Kris V. Williams_____
                                                Kris V. Williams, Esq.
                                                Counsel for Plaintiffs
                                                PO Box 28
                                                Sylva, NC 28779
                                                828-631-2300
                                                kvwms@hotmail.com

                                                ___/s/s/_Alan P. Woodruff___
                                                Alan P. Woodruff, Esq.

LEAD ATTORNEY
Counsel for Plaintiffs
9 Turkey Toe Lane
Arden, North Carolina 28704
(828) 676-1245
alan.jd.llm@gmail.com

- 20 –

Case 1:17-cv-00147-WO-JLW   Document 1   Filed 02/23/17   Page 20 of 20