IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

M. PETER LEIFERT, NORTH          )
CAROLINA GREEN PARTY, and GREEN  )
PARTY OF THE UNITED STATES,      )
                                 )
            Plaintiffs,          )
                                 )
     v.                          )          1:17CV147
                                 )
KIM WESTBROOK STRACH, in her     )
official capacity as Executive   )
Director of the North Carolina   )
State Board of Elections,        )
                                 )
            Defendant.           )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This matter is now before the court on Defendant's motion
to dismiss Plaintiffs' Fifth Amended Complaint for lack of
jurisdiction and failure to state a claim, (Doc. 58), and
Plaintiffs' Motion to Ascertain Status, (Doc. 62). For the
reasons that follow, this court finds that Defendant's motion to
dismiss should be granted, that all claims against Defendant
should be dismissed, and that Plaintiffs' motion to ascertain
will be denied as moot.

I.   **FACTUAL BACKGROUND**

Plaintiff M. Peter Leifert ("Leifert") is an individual who
is a registered voter in the state of North Carolina and

"desires to identify his preference for, and affiliation with, a currently unrecognized party on his voter registration and to be a candidate for statewide office as a candidate of the [sic] that party." (Fifth Amended Complaint ("Am. Compl.") (Doc. 57) ¶ 3.)[1] Plaintiff North Carolina Green Party is "the official state affiliate of the Green Party of the United States," a political organization that supports and endorses candidates for both nationwide and state offices including President of the United States. (Id. ¶¶ 4–5.) The complaint states that the Green Party of the United States "[h]ad candidates on the ballot [in] sufficient states in 2016 to qualify as a recognized party in

---

[1] In each of Plaintiffs' first four complaints, Plaintiffs alleged that Leifert "desire[d] to identify his preference for, and affiliation with, the North Carolina Green Party." (Doc. 1 ¶ 3; Doc. 5 ¶ 3; Doc. 13 ¶ 3; Doc. 26 ¶ 3.) It was only in the Fourth Amended Complaint, filed on November 7, 2017, that Plaintiffs modified this phrase by replacing "the North Carolina Green Party" with "a currently unrecognized party." (See Doc. 40 ¶ 3.) This allegation of a desire "to identify his preference for, and affiliation with, a currently unrecognized party" is problematic for standing purposes, as will be discussed further herein. There is a distinction between merely identifying an entity as a "political party" and alleging that the party does in fact intend to participate in the political process. The currently-operative pleading is devoid of any factual description of Leifert's preferred political party or that party's intentions, facts which are necessary to move these allegations from speculative and hypothetical to concrete and imminent.

North Carolina pursuant to N.C. Gen. Stat. . . . 163A-96(a)(3)."[2]
(Id. ¶ 5.)

All three Plaintiffs challenge various provisions of the
North Carolina election laws, N.C. Gen. Stat. §§ 163A et seq.
Plaintiffs argue, in summary, that (1) the ballot access
requirements for unaffiliated and write-in candidates are unduly
burdensome, (2) differential treatment of recognized and
unrecognized political parties violates principles of equal
protection and freedom of association, and (3) certain aspects
of the election laws impose contradictory or unclear
requirements upon both candidates and political parties.
Defendant has moved to dismiss all counts, arguing that

---

[2] It appears that Plaintiffs intended to identify N.C. Gen.
Stat. § 163A-950, formerly codified at N.C. Gen. Stat. § 163-96,
which provides, in relevant part, political party recognition to
a group of voters who "had a candidate nominated by that group
on the general election ballot of at least seventy percent (70%)
of the states in the prior Presidential election." N.C. Gen.
Stat. § 163A-950(a)(3). The statute was amended, effective
January 1, 2018, to add this method of qualification. See 2017
N.C. Sess. Laws 2017-214 (S.B. 656). While § 163A-950(a)(3)
makes no distinction between a national political party and a
state affiliate, by its terms, the language could apply only to
a state group associated with a national party that runs
candidates for office in other states. This court sees no reason
why the Green Party of the United States' uncontested 2016
qualification under § 163A-950(a)(3) would not also
automatically extend recognition to the North Carolina Green
Party, and Plaintiffs provide no basis for such a distinction.

Plaintiffs lack standing to bring certain counts and that the other counts should be dismissed for failure to state a claim.

## II.  PROCEDURAL HISTORY & STANDARD OF REVIEW

### A.  Procedural History

Plaintiffs filed their initial complaint in this matter on February 23, 2017. (See Doc. 1.) Plaintiffs have amended their complaint five times, mostly in response to intervening changes in the law. (See Docs. 23 and 45.) The current operative pleading is the Fifth Amended Complaint. (Am. Compl. (Doc. 57).) Defendant has moved to dismiss the Fifth Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), (Doc. 58), and filed a brief in support of her motion. (See Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Doc. 59).) Plaintiffs have responded in opposition to the motion to dismiss, (Pls.' Resp. to Def's Mot. to Dismiss ("Pls.' Resp. Br.") (Doc. 60)), and Defendant has replied, (Doc. 61). Plaintiffs filed a Motion to Ascertain Status on February 27, 2019. (Doc. 62.)

This court then issued a notice requesting supplemental briefing on Plaintiffs' standing to bring Counts II and III. (Doc. 64.) Plaintiffs filed a supplemental brief, (Pls.' Supp. Resp. to Mot. to Dismiss ("Pls.' Suppl. Resp.") (Doc. 65)), and Defendant replied, (Def.'s Reply to Pls.' Suppl. Resp. ("Def.'s Suppl. Reply") (Doc. 66)).

- 4 -

**B.    Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). Despite this deferential standard, a court will not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

## III.  **ANALYSIS**

### A.  **Standing & Mootness — Legal Framework**

The federal judicial power extends only to cases or controversies within the scope of Article III of the United States Constitution. See U.S. Const. art. III, § 2. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. ____, ____, 136 S. Ct. 1540, 1547 (2016). Stated differently, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 750 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

First, the plaintiff must have either suffered an injury or be in imminent fear of an injury. "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). That injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560

(1992) (internal citations, quotation marks and footnote omitted). Plaintiffs generally may challenge alleged violations prospectively, provided that "the threatened injury is real, immediate, and direct." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974).

Second, the injury must be "fairly traceable" to the defendant's conduct. This does not mean that the plaintiffs must prove to an absolute certainty that the defendant's actions caused or are likely to cause injury; rather the "plaintiffs need only show that there is a substantial likelihood that defendant's conduct caused plaintiffs' harm." Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 72 (3d Cir. 1990) (quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 75 n.20 (1978)) (internal quotation marks omitted). While this standard excludes any injury that is "the result of the independent action of some third party not before the court, . . . [it] does not exclude injury produced by determinative or coercive effect upon the

action of someone else." Bennett v. Spear, 520 U.S. 154, 167, 169 (1997) (quoting Lujan, 504 U.S. at 560–61).

Third and finally, the law requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000). This requirement "examines the causal connection between the alleged injury and the judicial relief requested" and asks whether a judicial decision granting the requested relief will alleviate plaintiffs' alleged injury. See Allen, 468 U.S. at 753 n.19 (explaining the distinction between the "fairly traceable" and "redressable" components of standing).

The traditional standing requirements apply to ballot-access and election-law challenges. See, e.g., Constitution Party of Pa. v. Aichele, 757 F.3d 347, 361–68 (3d Cir. 2014). However, a plaintiff generally has standing to challenge state election laws even when the plaintiff has not taken substantive steps to obtain ballot access under the contested statutory provisions. See, e.g., Libertarian Party of Tenn. v. Goins, 793 F. Supp. 2d 1064, 1077 (M.D. Tenn. 2010) (reviewing Supreme Court precedent on the issue). For example, in Storer v. Brown, the Supreme Court found that two individuals had standing to challenge California's signature requirement for independent

candidates although the individuals provided no evidence that they had attempted to collect the requisite number of signatures. See 415 U.S. 724, 727–28, 738–40 (1974). The plaintiffs in Storer, however, did profess a desire to run as independent candidates because their party had failed to obtain ballot access as a recognized party. See id. at 727–28.

Mootness is closely related to standing. The Supreme Court has differentiated the two as follows: "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Friends of the Earth, 528 U.S. at 189. In other words, a case can be mooted when any element of standing is lost during the litigation. However, while the plaintiff generally bears the burden to demonstrate standing, see, e.g., Lujan, 504 U.S. at 561, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, 528 U.S. at 190; see also Wall v. Wade, 741 F.3d 492, 497 (4th Cir. 2014) ("[A] defendant's voluntary cessation of a challenged practice moots an action only if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably

be expected to recur.") (quoting <u>Friends of the Earth</u>, 528 U.S. at 189) (internal quotation marks omitted).

Even when an element of standing is lost, a claim is not moot if it is "capable of repetition, yet evading review." <u>See</u> <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982). This exception is often especially relevant to election law challenges. An alleged injury stemming from ballot access restrictions may reappear cyclically with each new election cycle. <u>See, e.g.</u>, <u>N.C. Right to Life Comm. Fund for Indep. Political Expenditures v. Leake</u>, 524 F.3d 427, 435–36 (4th Cir. 2008) (holding that a plaintiff has standing when "there is a reasonable expectation that the challenged provisions will be applied against the plaintiff[] again during future election cycles").

While not explicitly part of the standing or mootness doctrines, a closely-related maxim that limits federal jurisdiction is "[t]he traditional rule . . . that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." <u>New York v. Ferber</u>, 458 U.S. 747, 767 (1982). A facial overbreadth challenge is a narrow exception to this general rule. <u>See, e.g.</u>, <u>L.A. Police Dep't v. United Reporting Publ'g Corp.</u>, 528 U.S. 32, 39 (1999); <u>Broadrick v. Oklahoma</u>, 413 U.S.

601, 611–14 (1973) ("[S]tatutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn."). However, a plaintiff who challenges any statute on overbreadth grounds must still prove the traditional standing elements. See Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392–93 (1988).

### B. Ballot Access for Unaffiliated & Write-in Candidates (Counts I-A, I-B and IV)

#### 1. Arguments

Plaintiffs challenge certain provisions of North Carolina law that apply only to individuals seeking ballot access as either an unaffiliated or write-in candidate. Specifically, N.C. Gen. Stat. § 163A-1005 sets forth the process by which a qualified voter may have his or her name printed on the ballot as an unaffiliated candidate. N.C. Gen. Stat. § 163A-1006 lists the requirements to obtain ballot access as a write-in candidate. Plaintiffs also: (1) challenge the fact that § 163A-1005 permits only "qualified voters" to run as unaffiliated candidates, (2) contest the requirement that prospective unaffiliated candidates file petitions by the date of the

primary election, the Tuesday after the first Monday in March of an election year,[3] and (3) argue that the final paragraph of § 163A-1005 is unconstitutionally vague regarding the requirements for an unaffiliated candidate to have his or her name printed on the ballot. (See Am. Compl. (Doc. 57) ¶¶ 14-19, 25, 27-33.)

Defendant argues that Plaintiffs lack standing to challenge these provisions because they have not alleged that any Plaintiff is a qualified voter who intends to run as an unaffiliated or write-in candidate in any North Carolina election. (Def.'s Mem. (Doc. 59) at 4-5.) Rather, Plaintiffs allege only that Leifert "is a registered voter in North Carolina who desires to identify his preference for, and affiliation with, a currently unrecognized party on his voter registration and to be a candidate for statewide office as a candidate of the [sic] that party." (Am. Compl. (Doc. 57) ¶ 3.) Because the other Plaintiffs are organizations and thus ineligible to seek office, Defendant contends that "Plaintiffs

---

[3] Plaintiffs state that "[t]he primary election is held on the Tuesday following the first Monday in May." (Am. Compl. (Doc. 57) ¶ 17.) However, North Carolina sets the primary date as the "Tuesday next after the first Monday in <u>March</u> preceding each general election to be held in November," <u>see</u> N.C. Gen. Stat. § 163A-700(b) (emphasis added), and this date aligns with the North Carolina State Board of Elections' online calendar for 2020. <u>See</u> https://www.ncsbe.gov/Elections/Agency-Calendar.

fail to allege that they have sought, intend to seek, or have been discouraged from seeking ballot access as an unaffiliated candidate." (Def.'s Mem. (Doc. 59) at 4.) Similarly, with regard to the write-in process, Defendant notes that "the Complaint does not assert that [Leifert] has attempted to or desires to run . . . through a write-in campaign." (Id. at 14.) Plaintiffs argue, in response, that "[b]ecause of the requirement that all unrecognized parties are listed as unaffiliated on the ballot, Mr. Leifert would be unaffiliated." (Pls.' Resp. Br. (Doc. 60) at 7.) Plaintiffs further state that "partial compliance with constitutionally defective legislation is not required to confer standing to challenge such legislation." (Id. at 8 (emphasis omitted).)

### 2. **Analysis**

Here, the challenge outlined in the complaint is based on Leifert's stated desire to run as a candidate of the Green Party.[4] He can do this only if the Green Party is recognized under § 163A-950. A candidate of an unrecognized party can run

---

[4] Both N.C. Gen. Stat. §§ 163A-1005 and 163A-1006 apply only to "qualified voters," persons "born in the United States [or naturalized] . . . and who . . . have resided in the State of North Carolina and in the precinct in which the person offers to vote for 30 days next preceding an election." See N.C. Gen. Stat. § 163A-841. Leifert, as the only natural person among the Plaintiffs, is the only qualified voter.

only by qualifying under § 163A-1005 as unaffiliated _or_ by
running as a write-in candidate under § 163A-1006. While changes
to the unaffiliated or write-in process may indeed make it
easier for Leifert to run for election without any party
affiliation, those changes will have no impact whatsoever on
Leifert's ability to identify as a member of, or run as a
candidate of, the North Carolina Green Party.

Leifert does not allege that he intends to be a candidate
for statewide office as an unaffiliated or write-in candidate.
Cf. DeLaney v. Bartlett, 370 F. Supp. 2d 373, 374 (M.D.N.C.
2004) (finding that the plaintiff had standing to challenge
unaffiliated ballot access provisions, where he had engaged in a
petition process to run as an unaffiliated candidate). While it
may be true that the only way for a candidate of an unrecognized
party to run for office is either unaffiliated or via the write-
in process, the choice to run in this manner is still an
affirmative decision. Leifert does not allege that he intends to
pursue either avenue. Further, as Plaintiffs acknowledge,
"[c]andidates who are nominated by an unrecognized party . . .
[h]ave no statutory means of achieving ballot inclusion" outside
of running as an unaffiliated candidate pursuant to § 163A-1005
or utilizing the write-in process set forth in § 163A-1006. (Am.

Compl. (Doc. 57) ¶ 20.) But those means do not permit candidates to identify with a political party.

Plaintiffs argue that any candidate of an unrecognized party is, by definition, unaffiliated and thus has standing to challenge § 163A-1005.[5] But a potential candidate in this position has two options: (1) the candidate can work to achieve recognition for his or her political party, under § 163A-950, or (2) the candidate can attempt to run unaffiliated (under § 163A-1005) or as a write-in candidate (under § 163A-1006). First, it is simply too speculative to say that the alleged injury of being unable to identify as a member or candidate of an unrecognized party is fairly traceable to the restrictiveness of the North Carolina statutes governing unaffiliated and write-in candidates. This injury is potentially traceable to the statutes that govern the process by which a <u>political party</u> gains

---

[5] Plaintiffs further assert standing under the theory that "partial compliance with constitutionally defective legislation is not required to confer standing to challenge such legislation." (Pls.' Resp. Br. (Doc. 60) at 4 (emphasis omitted).) This court agrees that Plaintiffs are not required to utilize the purportedly unconstitutional ballot access provisions in order to have standing to challenge them; however, at least one plaintiff must allege that she personally intends to engage in a course of action that will render her susceptible to injury as a result of these statutes and that this injury can be redressed by a favorable judicial decision. See <u>Warth v. Seldin</u>, 422 U.S. 490, 498-99 (1975).

recognition; but to trace the injury to the unaffiliated or write-in process requires the speculative inference that an individual who is unable to run as a candidate of an unrecognized party will then choose to use either the unaffiliated or write-in process. (See Doc. 61 at 4.) Therefore, the injury that Plaintiffs identify is not fairly traceable to the specific state statutes identified in the Complaint and Plaintiffs lack standing for that reason.

Second, an order from this court enjoining enforcement of the unaffiliated or write-in statutes will not permit Leifert to run for statewide office as a candidate of the Green Party. A judgment by this court relaxing these requirements simply cannot redress Leifert's alleged injury: that he is unable to "identify his preference for, and affiliation with, a currently unrecognized party on his voter registration and to be a candidate for statewide office as a candidate of the [sic] that party." (Am. Compl. (Doc. 57) ¶ 3.) It is not merely speculative, but rather impossible, for the requested relief to remedy the alleged injury. See, e.g., Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 324 (4th Cir. 2002) ("[N]o relief granted against FWS would in any way render it 'likely' that the property would be developed."). Therefore, Plaintiffs

fail to satisfy the redressability portion of the standing inquiry.

Plaintiffs also may not bring a facial challenge to N.C. Gen. Stat. §§ 163A-1005 or 163A-1006 asserting the constitutional rights of others who wish to run as unaffiliated or write-in candidates. A facial challenge does not lift the plaintiff's burden of establishing standing as part of the case or controversy requirement, and Plaintiffs fail to meet the traceability and redressability prongs. See Knick v. Twp. of Scott, 862 F.3d 310, 320 (3d Cir. 2017) ("Facial challenges are no exception" to the standing rules), vacated and remanded on other grounds, ____ U.S. ____, 138 S. Ct. 1262 (2018); Williams v. Lew, 819 F.3d 466, 476 (D.C. Cir. 2016) ("We recognize that the contours of Article III standing with respect to facial constitutional challenges may be imprecise[, . . .] [b]ut we know of no case stating that a facial challenge to the constitutionality of a statute itself suffices to establish standing.").

This court finds that Counts I-A, I-B, and IV should be dismissed for lack of standing. Defendant's motion to dismiss these counts will be granted.

## C.  **Disparate Treatment of Recognized & Unrecognized Parties** (Counts II and III)

Plaintiffs next assert that, by providing benefits to recognized parties that are unavailable to unrecognized parties, North Carolina law denies equal protection. Defendant responds, in part, that Plaintiffs lack standing to challenge any statutory hurdle that applies to unrecognized parties because Plaintiff "North Carolina Green Party was recently recognized under N.C. Gen. Stat. § 163A-950 as an official party in North Carolina." (Def.'s Mem. (Doc. 59) at 10.) Defendant appears to be referring to changes to § 163A-950 enacted in 2017. The North Carolina state legislature amended the definition of a recognized political party to include any "group of voters [that] had a candidate nominated by that group on the general election ballot of at least seventy percent (70%) of the states in the prior Presidential election." N.C. Gen. Stat. § 163A-950; see also 2017 N.C. Sess. Laws 2017-214 (S.B. 656). It appears that the North Carolina Green Party became a recognized party once this law took effect and remains a recognized party in North Carolina based on its out-of-state ballot presence in the 2016 presidential election. See, e.g., Colin Campbell, Republicans helped N.C. Green Party get on the ballot, Durham Herald-Sun, Apr. 13, 2018 (stating that the North Carolina Green

Party was the only party to meet the new 70% requirement and is now the fourth recognized political party with ballot access in the state).

Voluntary modifications to a challenged statute after a complaint is filed are analyzed under the mootness doctrine. Such actions do not necessarily moot the claim, as the defendant must generally demonstrate that "the allegedly wrongful behavior could not reasonably be expected to recur" and is not "capable of repetition." Friends of the Earth, 528 U.S. at 190–91. But Plaintiffs filed their Fifth Amended Complaint after the 2017 amendment to N.C. Gen. Stat. § 163A-950 and, apparently, after the North Carolina Green Party gained recognition.

Based on the underlying facts, Defendant's challenges straddle the line between standing and mootness and both parties confuse these similar inquiries in their briefing. (See, e.g. Def.'s Mem. (Doc. 59) at 10; Pls.' Suppl. Resp. (Doc. 65) at 2.) Standing is evaluated at the time the operative pleading was filed: in this case, the Fifth Amended Complaint. See, e.g., Cty. of Riverside v. McLaughlin, 500 U.S. 44, 51 (1991) (evaluating standing "at the time the second amended complaint was filed"); Hunter v. Branch Banking & Tr. Co., Civil Action No. 3:12-CV-2437-D, 2013 WL 4052411, at *3 n.4 (N.D. Tex. Aug. 12, 2013) (collecting cases). Therefore, the appropriate

inquiry here is whether Plaintiffs have standing, not whether the claims have been mooted. Defendant relies only on the North Carolina Green Party's recognition to argue for mootness, (see Def.'s Suppl. Reply (Doc. 66) at 4), but this event (by definition) could not have mooted any claims filed after it occurred.

Under this analysis, the "capable of repetition" exception does not apply. See Johnson v. Moore, 958 F.2d 92, 94–95 (5th Cir. 1992); Nelsen v. King Cty., 895 F.2d 1248, 1254 (9th Cir. 1990). Having noted this distinction, this court will nevertheless consider the parties' arguments in this regard because "the standards for evaluating the threat of future harm under the standing and mootness doctrines are similar." Nelsen, 895 F.2d at 1254.

Because Plaintiffs largely failed to address the impact of the 2017 amendment and the North Carolina Green Party's subsequent recognition on standing in their initial brief, this court requested supplemental briefing on standing for Counts II and III. (See Doc. 64.) In their supplemental brief, Plaintiffs state that Leifert "has no desire to register an affiliation with" the Green Party and instead wishes to affiliate with a different, unidentified and still-unrecognized political party. (Pls.' Suppl. Resp. (Doc. 65) at 2.) Therefore, Plaintiffs

argue, Leifert has standing to challenge the voter affiliation provision in N.C. Gen. Stat. § 163A-863(d) as applied to unrecognized parties. With regard to the voter list statute, § 163A-871(d), Plaintiffs assert that they are subject to an injury "capable of repetition yet evading review" because the Green Party might lose its recognition following the 2020 election and thus be deprived of the ability to obtain a free voter list. ((Pls.' Suppl. Resp. (Doc. 65) at 2-4.)

Defendant has replied to Plaintiffs' supplemental standing brief. (See Def.'s Suppl. Reply (Doc. 66).) First, Defendant asserts that Leifert faces only a hypothetical risk of injury by operation of N.C. Gen. Stat. § 163A-863(d) because Plaintiffs have not identified a specific unrecognized party with which Leifert wishes to affiliate. (Id. at 1–2.) Second, Defendant argues that, because Plaintiffs have effectively mooted their own injury by qualifying for recognition, the "capable of repetition yet evading review" doctrine does not apply. (Id. at 3–5.)

### 1.   Count II – Voter Affiliation

This court is, frankly, thoroughly confused by Plaintiffs' supplemental briefing regarding Count II, the challenge to N.C. Gen. Stat. §§ 163A-863(d) and 163A-950. (See Pls.' Suppl. Resp. (Doc. 65).) Plaintiffs have filed an original complaint and five

amended complaints. In four of those complaints, spanning the time frame of February 23, 2017 to November 2017,[6] (see Docs. 1, 5, 13 & 26), Plaintiffs alleged that Leifert "supports the principles of the North Carolina Green Party and desires to identify his preference for, and affiliation with, the North Carolina Green Party . . . ." (See Docs. 1, 5, 13 & 26 ¶ 3 (emphasis added).) After a stay of this case, Plaintiffs (including Leifert), filed a notice acknowledging that new legislation negated one of their claims. (Doc. 39 at 1.)

Plaintiffs simultaneously filed a Fourth Amended Complaint on November 7, 2017. (Doc. 40.) In the Fourth Amended Complaint, without explanation, Plaintiffs omitted any reference to Leifert's support for or desire to affiliate with the Green Party and instead alleged a desire to affiliate with "a currently unrecognized party." (Id. ¶ 3.) Plaintiffs offer no description of this "unrecognized party." Plaintiffs fail to state whether this party is the Green Party or some other party, nor do they explain how they are using the term "political party." In the absence of any factual description whatsoever,

---

[6] It appears that the Third Amended Complaint was operative up until the notice and Fourth Amended Complaint were filed in November 2017. Plaintiffs did not make any filing indicating their intent to file an additional amended complaint prior to November.

Plaintiffs' allegations merely invite a guessing game as to whether Leifert wants to affiliate with the Green Party or with some other person or organization calling itself a "political party" but whose purpose and intentions as to state-wide elections are unclear.

Given the timing of this sudden and unexpected change in Plaintiffs' allegations — that is, immediately following the addition of N.C. Gen. Stat. § 163A-950(a)(3)[7] and only three months after alleging that Leifert intended to affiliate with the Green Party, (compare Doc. 26 ¶ 3 with Doc. 40 ¶ 3) — this court has substantial concerns that Plaintiffs changed Leifert's purported intentions to manufacture standing. Some courts have held that a district court is "not required to accept as true the inconsistent allegations in [an] . . . amended complaint." Bradley v. Chiron Corp., 136 F.3d 1317, 1325-26 (Fed. Cir. 1998); see also Palm Beach Strategic Income, LP v. Salzman, No. 10-CV-261 (JS)(AKT), 2011 WL 1655575, at *5-7 (E.D.N.Y. May 2, 2011) (holding that the court could not "plausibly accept as

---

[7] The North Carolina Green Party was recognized pursuant to subsection (a)(3), which was added to the statute by S.B. 656. See 2017 N.C. Sess. Laws 2017-214. S.B. 656 was passed by a veto override on October 17, 2017. See N.C. H.R. Vote Tran., 2017 Reg. Sess. S.B. 656.

true" an allegation that was blatantly inconsistent with the party's earlier pleadings).

The circumstances under which Plaintiffs amended their allegations regarding Leifert's intent to affiliate with the Green Party are troubling, especially as they occurred shortly following the legislative amendment of § 163A-950. However, at this stage of the proceedings, this court will apply the "general rule [that] an amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mount Rainer, 238 F.3d 567, 572 (4th Cir. 2001) (quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000)) (internal quotation marks omitted); see also New Hickory Pizza, Inc. v. TIG Ins. Co., Case No. 5:16-cv-00164-RLV-DSC, 2017 WL 3840278, at *5-6 (W.D.N.C. Sept. 1, 2017) (collecting cases, noting that the approach of considering prior inconsistent allegations appears to be both specific to the Second Circuit and to require "entirely inconsistent" statements).

Assuming arguendo that (despite Plaintiffs' statements to the contrary) Leifert still wishes to affiliate with the North Carolina Green Party, Plaintiffs do not dispute that the Green Party's recognition under N.C. Gen. Stat. § 163A-950(a)(3) would render Count II subject to dismissal because there is no injury and thus no standing. If Leifert in fact wishes to affiliate

with a different, still-unrecognized party, he has failed to establish that the injury of being denied this opportunity is actual or imminent. See, e.g., Clapper v. Amnesty Int'l USA, 568 U.S. 398, 401-02 (2013) ("[R]espondents cannot manufacture standing . . . based on hypothetical future harm that is not certainly impending."). Leifert's claim is not merely hypothetical, but on very dubious factual footing. Leifert asks this court to render an advisory opinion based on a hypothetical scenario; but, of course, federal courts may not issue such advisory opinions. See, e.g., Catawba Riverkeeper Found. v. N.C. Dep't of Transp., 843 F.3d 583, 589 (4th Cir. 2016) (declining to issue an advisory opinion based "upon a hypothetical state of facts" where the challenged policies "pose[d] only hypothetical and speculative harm") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

Finally, because Plaintiffs fail to provide any description of the alleged "unrecognized political party" or its activities, they do not plausibly allege an injury that this court can redress. Plaintiffs do not allege facts to plausibly demonstrate that any standard created by the state of North Carolina would provide redress by allowing Leifert to affiliate with this undescribed, unrecognized political party. Specifically, Plaintiffs do not state whether this unidentified party placed a

candidate on the ballot in the last election, (see N.C. Gen.
Stat. § 163A-950(a)(1)), or whether this party has filed a
"petition[] for the formulation of new a political party," (see
N.C. Gen. Stat. § 163A-950(a)(2)). Because Plaintiffs provide no
information about the party's size, membership, or past steps
toward recognition, this court can only speculate about what
changes to N.C. Gen. Stat. § 163A-950 might permit Leifert's
desired affiliation. Plaintiffs therefore have not satisfied the
redressability portion of standing. See Friends of the Earth,
528 U.S. at 180-81.

    Plaintiffs allege that disparities in treatment of
recognized and unrecognized parties "[v]iolate[] principles of
freedom of speech," suggesting a potential First Amendment
claim. (Am. Compl. (Doc. 57) ¶ 44.) The relaxed First Amendment
standing rules, see Broadrick 413 U.S. at 612, permit a litigant
to sue to protect the constitutional rights of third parties but
do not remove the traditional standing requirements. See, e.g.,
Am. Booksellers, 484 U.S. at 392-93; Prime Media, Inc. v. City
of Brentwood, 485 F.3d 343, 349-50 (6th Cir. 2007). In other
words, a plaintiff claiming overbreadth can sue even if "a more
circumscribed version of that rule of law could be applied in a
constitutional fashion to prohibit the plaintiff's conduct"; the
plaintiff may argue that the statute nevertheless sweeps too

broadly into the constitutionally-protected conduct of third parties. Prime Media, 485 F.3d at 350. However, the plaintiff himself must demonstrate an injury-in-fact. Id. Here, any overbreadth challenge fails for the same reasons described above: Leifert has not alleged any imminent, non-speculative injury that is redressable.

Leifert lacks standing to challenge the party affiliation provision set forth in N.C. Gen. Stat. § 163A-863(d), and Defendant's motion to dismiss that claim will be granted.

### 2. Count III – Voter Registration Lists

In Count III, Plaintiffs challenge North Carolina's decision to provide one free copy of each county's voter registration list to recognized political parties only, at certain times specified by statute. See N.C. Gen. Stat. § 163A-871(d). In summary, Plaintiffs argue that, because "the Green Party must satisfy the requirements of § 163A-950(a)(1) or (3) to retain its recognized status beyond 2020[, . . .] Count III falls into the capable of repetition yet evading review exception." (Pls.' Suppl. Resp. (Doc. 65) at 3.)

As described above, the "capable of repetition" exception is an exception to the mootness doctrine and is not relevant to Plaintiffs' standing. Nevertheless, because both parties address this exception, this court will briefly assume for argument that

it applies and explain why Plaintiffs cannot satisfy the legal standard.

The "capable of repetition" exception applies only when there is "a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." Murphy v. Hunt, 455 U.S. 478, 482 (1982) (internal quotations marks omitted). While the Supreme Court has more recently articulated a relatively relaxed statement of the exception, see Honig v. Doe, 484 U.S. 305, 318 n.6 (1988), the "Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test" and has always conducted an inquiry into whether it is reasonable to expect the reoccurrence of the alleged harm. Murphy, 455 U.S. at 482; see also Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 463 (2007) (finding a "reasonable expectation or demonstrated probability" where the plaintiff "credibly claimed that it planned on running materially similar future targeted broadcast ads . . . and there is no reason to believe that the FEC will refrain from prosecuting violations") (internal quotation marks omitted).

On the facts presented, there is no basis for this court to conclude that the North Carolina Green Party has a reasonable expectation of losing its recognition. The North Carolina Green

Party achieved recognition under N.C. Gen. Stat. § 163A-950(a)(3) based on the Green Party of the United States' out-of-state ballot presence,[8] and Plaintiffs present nothing to suggest that this national presence has diminished such that the North Carolina Green Party is at risk of losing recognized status in the 2020 election.[9] This scenario is merely speculative and requires a series of attenuated events: the Green Party must first lose recognition, be unrecognized at a time when it would otherwise be eligible obtain a free list of registered voters under § 163A-871(d), and then request and be denied such a list. Plaintiffs fail to demonstrate "a reasonable expectation or a demonstrated probability" of harm based on the Green Party's possible future derecognition. Therefore, the "capable of repetition" exception to the mootness doctrine (if it were relevant to this case) would not apply.

---

[8] Plaintiffs do not assert in this lawsuit that the 70% threshold in § 163A-950(a)(3) is itself unconstitutional in any way.

[9] Plaintiffs, as "[t]he party invoking federal jurisdiction," bear the burden of demonstrating standing and supporting "each element . . . in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561; see also Stasko, 282 F.3d at 320.

As to Plaintiffs' standing for Count III, Plaintiffs must show that "threat of injury [is] both real and immediate, not conjectural or hypothetical." City of L.A. v. Lyons, 461 U.S. 95, 101-02 (1983) (internal quotation marks and citations omitted). Plaintiffs must also demonstrate that it is likely "that the injury will be redressed by a favorable judicial decision." Lujan, 504 U.S. at 561 (internal quotation marks omitted). First, this court finds that the threat of injury is likely hypothetical when the challenged statute does not actually apply to any individual plaintiff at the time the operative pleading is filed. In the cases that Plaintiffs rely upon,[10] the challenged statute remained in force and continuously applicable to the challenger. See Honig, 484 U.S. at 318-20 (noting the plaintiff's "continued eligibility for educational services under the EHA"); Leake, 524 F.3d at 432-33, 435-36 (finding standing to challenge a statutory "system of optional public funding for candidates seeking election to the state's supreme court and court of appeals," where the challengers had not specifically alleged a desire to participate in future elections but would be subject to the challenged statutes if

---

[10] While these cases deal with mootness rather than standing, this court finds the applicability of the challenged statute relevant to both inquiries.

they did). Here, however, the alleged unconstitutional deprivation does not currently apply to any Plaintiff because the North Carolina Green Party is a recognized political party; for that reason, any purported harm is merely theoretical.

Plaintiffs also cite to the Fourth Circuit decision in Stop Reckless Economic Instability Caused by Democrats v. Federal Election Commission, 814 F.3d 221 (4th Cir. 2016), which further undermines standing here. In that case, four political action committees (or PACs) "challeng[ed] the constitutionality of certain contribution limits established by the Federal Election Campaign Act of 1971." Id. at 224. The statute "set[] different contribution limits for different classes of donors and recipients"; for example, a PAC with a fifty-person donor pool that met registration timing and contribution thresholds qualified as a multicandidate political committee (or MPC) and was subject to more permissive donation limits. Id. at 225. The Fourth Circuit found that the claims of certain plaintiff PACs that had qualified as MPCs were moot as to the regular PAC spending restrictions. See id. at 229–32. Specifically, the court held that each plaintiff had to show a "reasonable expectation that they would be subject to the same limit again." Id. at 230.

The facts in Stop Reckless Econ. Instability are directly
analogous to the facts here. While that case dismissed claims
for mootness, rather than lack of standing, the Fourth Circuit's
analysis confirms that Plaintiffs here lack standing to bring
Count III. The Fourth Circuit found that certain claims became
moot once the plaintiff PACs qualified as MPCs, an event that
occurred after the operative complaint was filed. See Stop
Reckless Econ. Inequality, 814 F.3d at 227–28. Due to this
event, "the contribution limit they are challenging therefore
ceased to apply to them, [and] the district court was no longer
in position to prevent any threatened injury (or provide redress
for any past injury)." Id. at 229. Had the MPC qualification
occurred before the complaint was filed, as was the case here,
the plaintiffs would have lacked standing because they could not
show redressability.

The operation of the North Carolina statutory framework may
indeed produce an anomalous situation where the North Carolina
Green Party is temporarily derecognized under § 163A-951 and
then immediately re-recognized under § 163A-950(a)(3) in
successive election cycles. See Part III.E infra. However, this
court finds that any perceived potential injury from that
process is too speculative to confer standing to challenge
§ 163A-871(d). Further, this court does not believe that any

temporary derecognition described above would actually expose Plaintiffs to a constitutional injury because Plaintiffs have provided no plausible allegations to suggest that the North Carolina Green Party is in danger of falling below the 70% national threshold in future elections; therefore, Plaintiffs will be able to moot their own claims by immediately applying for re-recognition under § 163A-950(a)(3).

The North Carolina Green Party suffers no injury from the operation of N.C. Gen. Stat. § 163A-871(d), because, as a recognized political party, the North Carolina Green Party can obtain a free voter list. Plaintiffs (1) fail to demonstrate that any purported injury is actual or imminent, as opposed to speculative and theoretical, and (2) fail to establish that a favorable decision would redress any alleged injury. This court finds that Plaintiffs lack standing to challenge the voter registration list distribution process set forth in N.C. Gen. Stat. § 163A-871(d). Therefore, Defendant's motion to dismiss Count III will be granted.

### D. <u>Imposition of a Filing Fee on Newly-recognized Political Parties</u> (Count V)

#### 1. <u>Arguments & Standing</u>

N.C. Gen. Stat. § 163A-953 states that any newly-recognized political party may have the names of its candidates printed on

the ballot "upon paying a filing fee equal to that provided for candidates for the office in G.S. 163A-979 or upon complying with the alternative available to candidates for the office in G.S. 163A-980." N.C. Gen. Stat. § 163A-979 requires all candidates, not parties, to pay a filing fee of 1% of the annual salary of the office sought upon filing a notice of candidacy. N.C. Gen. Stat. §163A-980 provides that, in lieu of paying this fee, a prospective candidate may file a petition signed by a specified number of voters. See N.C. Gen. Stat. § 163A-980(b).

Plaintiffs argue that § 163A-953 imposes a burden on newly-recognized parties that is not imposed on other recognized political parties and is not supported by any "rational state interest."[11] (Am. Compl. (Doc. 57) ¶¶ 91-94.) Specifically, Plaintiffs argue that the statute by its terms requires parties, not candidates, to pay the filing fee. Defendant asserts, to the contrary, that the statutory framework is merely intended to subject the candidates of newly-recognized parties to the same

---

[11] The legal basis for this challenge is not immediately clear from the Complaint. While Plaintiffs might assert an Equal Protection challenge to the statute, on the basis that it impermissibly discriminates against newly-recognized parties vis-à-vis other recognized parties, the claim itself does not mention equal protection principles. Therefore, this court will presume that Plaintiffs are asserting a Fourteenth Amendment due process challenge. See, e.g., Anderson v. Celebrezze, 460 U.S. 780, 786-87 (1983).

fee or petition requirements as candidates of all other parties.
(See Def.'s Mem. (Doc. 59) at 17–18.)

With regard to Count V, Defendant does not appear to
dispute that Plaintiffs have standing.[12] This court finds that
the North Carolina Green Party, as a newly-recognized political
party under § 163A-950, would be directly subject to the filing
fee referenced in § 163A-953 if that fee applied to political
parties. Plaintiffs state that the North Carolina Green Party
exists "for purposes of nominating candidates for political
office." (Am. Compl. (Doc. 57) ¶ 4.) The North Carolina Green
Party therefore has a prospective injury that may occur whenever
it nominates a candidate for office. This injury is imminent and
not speculative.

## 2.  Analysis

When the validity of an act of the Congress is
drawn in question, and even if a serious doubt of
constitutionality is raised, it is a cardinal
principle that [a court] will first ascertain whether
a construction of the statute is fairly possible by
which the question may be avoided.

_____

[12] Defendant does state that, "[a]s to each of the
challenged statutes, Plaintiffs fail to articulate facts
establishing their standing or that the claim is a live
controversy." (Def.'s Mem. (Doc. 59) at 4.) However, in the
section of the memorandum dealing with Counts V and VI
specifically, Defendant does not argue standing and instead
asserts only that the claims are foreclosed because of errors in
Plaintiffs' statutory interpretation. (See id. at 17–19.)
Therefore, this court finds that Defendant has waived any
argument that Plaintiffs lack standing to bring Counts V and VI.

Crowell v. Benson, 285 U.S. 22, 62 (1932); see also Boos v. Barry, 485 U.S. 312, 330-31 (1988) ("Indeed, the federal courts have the duty to avoid constitutional difficulties by [adopting a constitutional construction of the challenged statute] if such a construction is fairly possible."); Ferber, 458 U.S. at 769 n.24 ("When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction.").

Plaintiffs assert, without supporting case law, that "a question of the proper construction of the statute . . . cannot be answered in ruling on a motion to dismiss."[13] (Pls.' Resp. Br.

---

[13] Plaintiffs further devote over a page of their response brief to argue that the majority of Defendant's arguments are appropriate only at the summary judgment, and not the motion to dismiss, stage. (Pls.' Resp. Br. (Doc. 60) at 1–2.) This court, however, does not accept the contention that "arguments going to the merits of Plaintiff's claims" should be disregarded at the motion to dismiss stage. (Id. at 1 (emphasis omitted).) Rather, a motion to dismiss tests the legal sufficiency of the complaint and this court may consider whether the substantive allegations are sufficiently plausible under existing legal precedent to state a claim for relief. See Iqbal, 556 U.S. at 679–80. Further, Plaintiffs do not appear to dispute (nor could they reasonably do so) that this court must consider standing at the current stage of the proceedings, may consider evidence outside of the pleadings for that specific purpose, and must dismiss any claims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) if its finds no standing. See, e.g., Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768–69 (4th Cir. 1991).

(Doc. 60) at 23-24.) This court finds no basis for that proposition, and instead notes that courts frequently decide questions of statutory interpretation at the motion to dismiss stage when the issue is dispositive under the Twombly/Iqbal standard. See, e.g., Mason v. Am. Tobacco Co., 346 F.3d 36, 37–38, 43 (2d Cir. 2003) (affirming a district court order granting a motion to dismiss that "rest[ed] upon a narrow issue of statutory construction"). The allegations in Count V will survive only if there is no "fairly possible" interpretation of the challenged statute that eliminates the alleged unconstitutional burden upon newly-recognized political parties.

While this court finds that § 163A-953 could reasonably be read as imposing a filing fee on either the party itself or on each candidate of the party, this court further finds no impediment to Defendant's interpretation which results in a constitutional construction of the statute. See Ferber, 458 U.S. at 769 n.24. That is, reading the filing fee requirement to apply to candidates (not parties), does not create statutory ambiguity or render any portion of the statute meaningless. This interpretation is fairly possible and eliminates the alleged burden on Plaintiffs' due process rights because the North Carolina Green Party, as a newly-recognized party, will not have to directly pay a fee to obtain ballot access. Rather, its

candidates must simply comply with the generally-applicable fee table in § 163A-979 or meet the petition requirement of § 163A-980.

There is, potentially, an argument that this interpretation renders the first paragraph of N.C. Gen. Stat. § 163A-953 redundant or surplusage because candidates of newly-recognized parties are directly subject to §§ 163A-979 and 163A-980. However, this court finds that Defendant's, and this court's, construction of § 163A-953 does not render its first paragraph redundant because candidates of a newly-recognized political party can (in that party's first year of recognition) be chosen only by party convention and not by primary election. See N.C. Gen. Stat. § 163A-953. §§ 163A-979 and 163A-980, on the other hand, apply by their terms only to candidates who are chosen by a primary election. Therefore, the first paragraph of § 163A-953 extends the fee and petition requirements to candidates who are chosen through a newly-recognized party convention.

In conclusion, this court finds that N.C. Gen. Stat. § 163A-953 can be reasonably construed as applying the filing fee and petition requirements to candidates of newly-recognized parties, rather than to newly-recognized parties themselves. Therefore, this court finds that Plaintiffs fail to state a claim for relief based upon any alleged unconstitutional burden

imposed on newly-recognized political parties. Defendant's
motion to dismiss Count V will be granted.[14]

### E.    **Termination of "Political Party" Status** (Count VI)

#### 1.    **Arguments & Standing**

N.C. Gen. Stat. § 163A-951 states that "[w]hen any
political party fails to meet the test set forth in G.S. 163A-
950(a)(1), it shall cease to be a political party within the
meaning of the primary and general election laws and all other
provisions of this Subchapter." When read in conjunction with
§ 163A-950(a)(1), the statute provides that any political party
that fails to receive at least 2% of the statewide vote for
governor or for presidential electors will cease to be a
"political party." Plaintiffs contend that this deprivation is
overly broad because § 163A-951 appears to deprive any party
that falls below the 2% threshold of even unrecognized status

---

[14] Leifert similarly has no claim under N.C. Gen. Stat.
§ 163A-953 because, were he to run for office as a Green Party
candidate, he would be treated the same as candidates of
established parties. See, e.g., Anderson, 460 U.S. at 788
("[T]he state's important regulatory interests are generally
sufficient to justify reasonable, nondiscriminatory
restrictions."); Lubin v. Panish, 415 U.S. 709, 718-19 (1974)
(suggesting that a candidate filing fee, when accompanied by
some alternative means of achieving ballot access such as a
petition process, is constitutional). Leifert's associational
rights are also not burdened because he will incur no fee merely
by expressing his support for or affiliation with the North
Carolina Green Party.

under all of Subchapter III of Chapter 163A — i.e., all state election law provisions. (Am. Compl. (Doc. 57) ¶¶ 98-102.) Because this interpretation is, according to Plaintiffs, inconsistent with the legislature's intent, Plaintiffs urge this court to "[f]ind[] that NCGS § 163A-951 is a nullity" and enjoin its enforcement. (Id. ¶ 103.)

Defendant argues that the definition of "political party" in N.C. Gen. Stat. § 163-1411(76) is limited to Article 23 of Subchapter III because § 163A-1411 begins with the phrase "[w]hen used in this Article . . . ." (Def.'s Mem. (Doc. 59) at 18-19.) Therefore, Defendant asserts that § 163A-951 deprives a political party that falls short of the 2% threshold of only its status under Article 23, which deals with campaign contributions and expenditures. (See id.) Plaintiffs respond that § 163A-951 in fact applies to "all other provisions of this Chapter" and therefore is overly broad. (Pls.' Resp. Br. (Doc. 60) at 25 (emphasis omitted).)

Here, Defendant again does not dispute that Plaintiffs have standing. This court finds that Plaintiffs are potentially injured by the alleged ambiguity of the statutes at issue because Plaintiffs might fall below the 2% threshold and face uncertainty about which provisions of the North Carolina

election code apply to them as an unrecognized party. This threat is concrete and particularized, as to N.C. Gen. Stat. § 163A-951 alone, because it appears that the North Carolina Green Party was, prior to 2016 and its qualification under the new 70% test in § 163A-950(a)(3), apparently unable to qualify for recognition by reaching the 2% threshold in § 163A-950(a)(1). Therefore, it stands to reason that the North Carolina Green Party faces a risk of confusion regarding its status if its candidate for either governor or president receives less than 2% of the statewide vote in the 2020 general election (which seems an imminent possibility) or if it loses ballot access in other states (thus dropping below the 70% test in § 163A-950(a)(3)).[15]

The standing result here is consistent with this court's analysis in Part III.C.2 supra for two reasons. First, the potential injury of confusion regarding political party status

---

[15] It is not clear from the language of §§ 163A-950 and 163A-951 at what exact point in time a recognized party loses recognition. Recognition under § 163A-950(a)(3) is not permanent and does not extend for any defined period. Therefore, it seems that the North Carolina Green Party would lose recognition immediately if it receives less than 2% of the vote for governor or president in the 2020 general election. See N.C. Gen. Stat. § 163A-951. The North Carolina Green Party could then re-qualify under § 163A-950(a)(3) by filing documentation that it met the 70% threshold in that very same election. The party would, however, apparently be unrecognized during the brief interim period.

and deprivation of benefits will occur directly by operation of the challenged statute (§ 163A-951). The potential denial of voter lists, on the other hand, is not as directly traceable to the challenged statute because it can occur only if the party first loses recognition and then applies for a voter list within the specified timeframes. Second, the North Carolina Green Party is not able to moot its own potential claims against § 163A-951. The temporary derecognition itself is the alleged injury and Plaintiffs cannot themselves prevent this injury from occurring. Plaintiffs can, however, likely moot their own claim as to § 163A-871(d) by filing for re-recognition and then obtaining a free voter list.

##    2.    **Analysis**

This court finds no statutory ambiguity or inconsistency in the operation of N.C. Gen. Stat. § 163A-951. The definition of "political party" found in § 163A-1411(76) applies only within Article 23. See N.C. Gen. Stat. § 163A-1411. "Political party" is separately defined in § 163A-950(a). § 163A-951 uses the definition set forth in § 163A-950(a). This makes sense, because § 163A-950(a) articulates the test for when a party may be recognized and any party that loses recognition pursuant to § 163A-951 would no longer have the benefits and responsibilities conferred by recognition. § 163A-951 and

§ 163A-1411(76) are unrelated; the broader definition of "political party" in § 163A-1411(76) is expressly limited to a specific article dealing with campaign finance matters. Therefore, there is no "inherent incompatibility between the provisions of NCGS § 163A-951 and NCGS § 163A-1411," (Am. Compl. (Doc. 57) ¶ 100), and Plaintiffs will not be deprived of unrecognized status by § 163A-951. Plaintiffs fail to state a plausible claim for relief and Defendant's motion to dismiss Count VI will be granted.

## IV. CONCLUSION

For the foregoing reasons, this court finds that Defendant's motion to dismiss should be granted.

**IT IS THEREFORE ORDERED** that Defendant's motion to dismiss, (Doc. 58), is **GRANTED.**

**IT FURTHER ORDERED** that the claims in the Fifth Amended Complaint, (Doc. 57), are **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**IT FURTHER ORDERED** that Plaintiffs' motion to ascertain status, (Doc. 62), is **DENIED AS MOOT.**

A Judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 6th day of August, 2019.

_____
United States District Judge